**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JESUS SANCHEZ, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| v. | ) | |
| | ) | No. 24 C 6139 |
| | ) | Chief Judge Virginia M. Kendall |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Jesus Sanchez ("Sanchez") brought an action pursuant to 42 U.S.C. § 1983 and Illinois State law against Defendants Wexford Health Sources, Inc. ("Wexford"), Zaneta Green, and Denessa Armstrong for failure to provide him with adequate or timely medical care. (Dkt. 108). Wexford previously moved to transfer venue to the Central District of Illinois under 28 U.S.C. § 1404(a). (Dkt. 85). The Court granted Wexford's motion in its June 22, 2026 Opinion and Order . (Dkt. 104). Sanchez has filed a Motion for Reconsideration of that ruling under Federal Rule of Civil Procedure 59(e). (Dkt. 105). For the reasons set forth below, the Court denies Sanchez's Motion for Reconsideration.

**BACKGROUND**

The Court presumes the parties' familiarity with the facts of the case and includes only those relevant to the Motion before it. Since 2013, the Illinois Department of Corrections ("IDOC") has had custody over Sanchez. (Dkt. 108 ¶ 7). From August 2013 until July 12, 2013, Sanchez, an Illinois resident, served time at the Sheridan Correctional Center ("Sheridan") in Sheridan, Illinois, located in the Northern District of Illinois. (*Id.*) On July 12, 2013, IDOC

transferred Sanchez to the Graham Correctional Center ("Graham"), located in Hillsboro, Illinois, in the Central District of Illinois, where he remains incarcerated. (*Id.*)

Wexford contracted with IDOC to provide healthcare services to inmates at Sheridan and Graham. (*Id.* ¶ 11). On January 14, 2023, Sanchez suffered severe facial damage from an altercation with another inmate while incarcerated at Sheridan. (*Id.* ¶ 13). The Health Care Unit ("HCU") saw Sanchez that morning and provided him with antibiotic ointment, an ice pack, and medicated oral rinse. (*Id.* ¶¶ 14-16). Over the next two weeks, Sanchez continuously requested additional treatment at the HCU by filing medical requests and an emergency grievance, but claims he did not receive additional treatment. (*Id.* ¶¶ 17-28). On January 26, a correctional officer encountered Sanchez, and after seeing his deformed nose and learning that Sanchez had trouble breathing, the officer called the HCU. (*Id.* ¶ 29). A nurse saw Sanchez that night and scheduled Sanchez an appointment with a physician the following day. (*Id.* ¶ 30). Sanchez saw a physician assistant on January 27, and over the next three weeks, had two additional appointments for his medical condition. (*Id.* ¶¶ 31-35).

Toward the end of February 2023, IDOC had approved Sanchez's request to transfer to Graham. (*Id.* ¶¶ 35-36). The medical staff at the HCU recommended Sanchez see an outside specialist, to which Sanchez declined due to the fear that IDOC would place him on hold and delay his transfer to Graham. (*Id.* ¶ 36). Sanchez continued to communicate his frustration with Sheridan's medical treatment as he did not see another doctor at Sheridan. On July 12, 2023, IDOC transferred Sanchez to Graham. (*Id.* ¶¶ 35-39).

Once incarcerated at Graham, Sanchez submitted a "sick-call" request on July 17, 2023. (*Id.* ¶ 40). The medical staff informed Sanchez that no doctor could see him until the end of September. (*Id.* ¶ 41). Despite filing grievances and continuous sick-call requests, no physician

saw Sanchez until December 13, 2023, nearly five months later. (*Id.* ¶¶ 41-50). Sanchez eventually saw an ENT physician who indicated Sanchez may need plastic surgery to alleviate his symptoms; Wexford, however, would not pay for surgical intervention. (*Id.* ¶¶ 41-50). Two physicians, instead, prescribed nasal spray for Sanchez in March of 2024, which he did not receive until June 3, 2024. (*Id.* ¶¶ 55-64). The nasal spray did not help Sanchez's breathing problems. (*Id.* ¶ 65). Sanchez then received injections to help with his nasal troubles, which also did not resolve his issues. (*Id.* ¶ 68). Sanchez, as of July 2026, has not received any further treatment. (*Id.* ¶ 69).

Sanchez filed a complaint with the Court claiming that he continues to suffer from medical symptoms, including a deformed nose and an obstructed nasal airway, that make it difficult for him to sleep, breathe, and engage in physical activity. (*Id.* ¶ 73). In his Second Amended Complaint, Sanchez filed two claims against Wexford: violation of 42 U.S.C. § 1983 (Count I) and Medical Malpractice (Count III). The Court previously granted Wexford's motion to transfer venue to the Central District [85]. (Dkt. 104). Sanchez filed a Motion for Reconsideration regarding the Court decision to transfer venue. (Dkt. 105). The Court denies Sanchez's motion.

**LEGAL STANDARD**

"'Motions for reconsideration serve a limited function; to correct manifest errors of law or fact or to present newly discovered evidence.'" *Eberhardt v. Walsh*, 122 F.4th 681, 688 (7th Cir. 2024) (quoting *Eberhardt v. Walsh*, 122 F.4th 681, 688 (7th Cir. 2024)). A party can move to reconsider under Rule 58(e). *In re Abbott Lab'ys Preterm Infant Nutrition Prods. Liab. Litig.*, 184 F.4th 554, 560 (7th Cir. 2026). "Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact." *Eberhardt*, 122 F.4th st 688 (quoting *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006)). A manifest error of law or fact is "'the wholesale disregard, misapplication, or failure to

recognize controlling precedent.'" *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 642 (7th Cir. 2023) (citing *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)).

## DISCUSSION

On June 22, 2026, the Court granted Wexford's motion to transfer venue under § 1404(a). (Dkt. 104). Specifically, the Court held that Wexford "met its burden in establishing that the Central District of Illinois is the more convenient forum in which to litigate this dispute and that transferring the case is in the interest of justice." (*Id.* at 11). When weighing the transfer factors, the Court considered Sanchez to be domiciled in the Central District. (*Id.* at 3-4). Sanchez claims that the Court, in doing so, committed a manifest error of law. (Dkt. 106 at 1). More specifically, Sanchez states that the Court improperly applied Seventh Circuit precedent regarding Sanchez's residency. Sanchez further contends, "if the Court corrects its manifest error of law and equates [Sanchez's] residency with his pre-incarceration domicile in this District, then the Court must credit substantial deference to [Sanchez's] preference to litigate in this District." (Dkt. 106 at 5). According to Sanchez, this would tip the "scale of the transfer" in favor of his choice of venue, the Northern District of Illinois. (*Id.*).

Title 28 U.S.C. § 1404(a) governs motions to transfer venue. The statute allows a district court, "[f]or the convenience of parties and witnesses, in the interest of justice" to "transfer any civil action in any other district or division where it might have been brought or to any district or division in which all parties have consented." 28 U.S.C. § 1404(a). District courts have "broad discretion" under § 1404(a). *Buerger v. Ellis*, 740 F. App'x 500, 501 (7th Cir. 2018). As such, "when considering whether to transfer a case, a court must engage in a flexible and individualized analysis and look beyond a narrow or rigid set of considerations in their determinations." *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 708 (7th Cir. 2020) (cleaned up).

As the Court previously held, and reiterates once more, the Central District of Illinois is the more convenient forum to litigate this dispute in, and transferring this case there is in the interest of justice. (Dkt. 104). The Court emphasizes the Central District remains the better situated court to hear this case even if the Court believed Sanchez was domiciled in the Northern District.

**I. Convenience of the Parties**

"In evaluating the convenience of the parties and witnesses, courts weigh the following factors: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Thomas v. Illinois Cent. R.R. Co.*, 2025 WL 1638475, at *1 (N.D. Ill. June 9, 2025). Regardless of where Sanchez is domiciled, the factors weigh in favor of transferring the case to the Central District.

**a. Plaintiff's Choice of Forum**

In general, courts should rarely disturb a plaintiff's choice of forum. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 806 (7th Cir. 2016). However, if the factors weigh in favor of the defendant, the Court can use its discretion to transfer the case. *Id.*; *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 979 (7th Cir. 2010) (recognizing a defendant can successfully transfer venue when "the totality of the factors pointed to [another venue's] stronger nexus to the relevant events.").

Sanchez contends that Seventh Circuit precedent places Sanchez's domicile at his pre-incarceration domicile in the Northern District of Illinois. (Dkt. 106 at 5). According to Sanchez, if the Court considers his residency in this district for the purposes of domicile, then the Court must give his choice of forum substantial deference. (*Id.*) This would result, in Sanchez's opinion, in the case remaining in the Northern District of Illinois. (*Id.*) That argument overlooks the fact

that most of the other transfer factors support transferring this case. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) ("The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge."). Consequently, the Court would transfer this case even if Sanchez was domiciled in the Northern District of Illinois.

**b. Situs of Material Events**

"[T]he location of material events for purposes of venue is the location where the defendant's decisions and activities that gave rise to the claim took place." *Rudy v. D.F. Stauffer Biscuit Co.*, 666 F. Supp. 3d 706, 716 (N.D. Ill. 2023) (cleaned up). The situs of material events favors transfer, minimizing the deference given to Sanchez's choice of forum. *Kjaer Weis v. Kimsaprincess Inc.*, 296 F. Supp. 3d 926, 930 (N.D. Ill. 2017) ("The plaintiff's choice of forum is entitled to less deference, however, when another forum bears a stronger relationship to the dispute or the plaintiff's choice of forum has no connection to the material events in question.") (citing *Chi., Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955)) (cleaned up); *Williams v. Illinois*, 2019 WL 13199821, at *2 (N.D. Ill. June 20, 2019) ("The force of the plaintiff's choice is ... diminished if the chosen forum has relatively weak connections with the operative facts giving rise to the claim.") (cleaned up).

Sanchez's medical malpractice and deliberate indifference claims arose from events taking place at both the Sheridan facility and the Graham facility. (Dkt. 35). A preponderance of the events, nevertheless, took place at Graham facility. (Dkt. 104). On January 14, 2023, while incarcerated at Sheridan, Sanchez suffered a facial injury resulting in multiple lacerations, a bloody nose, a black eye, and bleeding lips. (Dkt. 108, ¶¶ 13-14). From January 14, 2023, until July 12, 2023, Sanchez experienced inadequate medical care at Sheridan. (*Id.* ¶¶ 13-39). On July 12, the

IDOC transferred Sanchez to Graham. (*Id.* ¶¶ 39). From July 12, 2023, to July 23, 2026, Sanchez received ineffective treatment at Graham, causing him continuous discomfort. (*Id.* ¶¶ 39-74)

In comparison to the six months of alleged inadequate treatment at Sheridan, Sanchez claims that he did not receive proper care at the Graham facility for the past three years. The situs of material events, thus, favors transfer to the Central District in Illinois.

**c. Relative Ease of Access to Sources of Proof**

The Court also considers the "relative ease of access to sources of proof." *Rsch. Automation, Inc.*, 626 F.3d at 978. Sanchez will have prisoner files and medical records at both the Graham facility and at the Sheridan facility. While this factor does not weigh heavily in favor of either the Central District or the Northern District of Illinois, "in an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly." *Rudy v. D.F. Stauffer Biscuit Co.*, 666 F. Supp. 3d 706, 716 (N.D. Ill. 2023) (quoting *Campbell v. Campbell*, 262 F. Supp. 3d 701, 710 (N.D. Ill. 2017)). The relative ease of access to proof, thus, plays a minimal role in venue transfer considerations. *Sunrise Bidders, Inc. v. GoDaddy Grp., Inc.*, 2011 WL 1357516, at *2 (N.D. Ill. Apr. 11, 2011) (when "electronic information can conveniently be accessed from, and stored in, any location," parties have a hard time establishing "it would be inconvenient or impractical to transfer documents[.]").

**d. Convenience of the Witnesses**

The convenience of the witness, "often viewed as the most important factor in the transfer balance," favors transfer to the Central District of Illinois. *Rudy v. D.F. Stauffer Biscuit Co.*, 666 F. Supp. 3d 706, 716 (N.D. Ill. 2023) (cleaned up); *see also Kline v. Semi Fleet, Inc.*, 2026 WL 2070540, at *3 (N.D. Ill. July 17, 2026). While Sanchez and Wexford have yet to identify party witnesses, the Court assumes they will come from both Graham and Sheridan. However, "the

convenience of party witnesses is given less weight than that of nonparty witnesses." *Id.* The Court previously discussed how "a majority—if not all—of the non-party witnesses reside in the Central District of Illinois[.]" (Dkt. 104 at 7). The convenience of witnesses, often "the most important factor in the transfer balance," thus, favors transfer to the Central District of Illinois. *Kline*, 2026 WL 2070540, at *3.

**e. Convenience of the Parties**

The convenience of the parties remains neutral for purposes of transferring venue as the Court explained in its Order. (Dkt. 104). When assessing the convenience of parties, courts consider where each party lives and the ability of the parties to pay the costs of litigating in a specific forum. *Fransen v. Union Pac. R.R. Co.*, 2026 WL 1954451, at *3 (N.D. Ill. July 6, 2026). Because the parties remain located in both the Northern District and in the Central District, the Court again, renders this factor neutral.

**II. Interest of Justice**

The interest of justice additionally favors transfer to the Central District. To determine if "the transfer would be in the 'interest of justice,' a court may consider several factors, including 'docket congestion and likely speed to trial in the transferor and potential transferee forums,' 'each court's relative familiarity with the relevant law,' 'the respective desirability of resolving controversies in each locale,' and 'the relationship of each community to the controversy.'" *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 708 (7th Cir. 2020) (quoting *Rsch. Automation*, 626 F.3d at 978). "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Rsch. Automation, Inc.*, 626 F.3d at 978.

As the Court mentioned in its previous Order, both courts have familiarity with the federal law at issue, so this factor does not weigh in the interest of either party. The other factors, however, favor transferring the case to the Central District. The Court discussed each factor in depth in its Order but briefly reiterates them. For docket congestion and likeliness of an earlier trial, as of December 31, 2025, the Central District had an average of 477 pending cases per judge in comparison to the 1,169 pending cases per judge in the Northern District. (Dkt. 104 at 10). Because the Central District has fewer pending cases, on average, than the Northern District, this factor favors transfer. *Hoffman v. BCI Acrylic, LLC*, 2025 WL 2896821, at *7 (N.D. Ill. Oct. 10, 2025) (when judges have less pending cases, on average, in one district than another, transfer favors the district with a lower pending caseload).

The desirability of resolving controversies and the relationship of the community to the controversy also supports transferring the case to the Central District. Most of the events relevant to Sanchez's claims took place at the Graham facility, located in the Central District. *Armstrong v. Bigley*, 2004 WL 2108653, at *4 (N.D. Ill. Sept. 21, 2004) (recognizing "[t]he Northern District thus has a stronger relationship to the instant dispute because it is the situs of the more meaningful events."). Thus, the Central District has a greater desirability in resolving the controversary, and a closer relationship with it.

When considering the convenience of parties and the interest of justice, the factors weigh in favor of transferring the case to the Central District regardless of where Sanchez is domiciled. *Rsch. Automation, Inc.*, 626 F.3d at 978 (cleaned up) (Section 1404(a) "permits a flexible and individualized analysis and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations.").

## **CONCLUSION**

For the reasons stated above, the Court denies Sanchez's Motion for Reconsideration. [105]. The Court directs the Clerk to transfer the case to the Central District of Illinois.

Virginia M. Kendall
United States District Judge

Date: October 13, 2026